**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **KEVIN ALEXIS VALLE CERNA,**<br><br>***Petitioner*,**<br>**v.**<br><br>**WARDEN OF THE ERO EL PASO CAMP EAST MONTANA; MARY DE ANDA-YBARRA,** *in her capacity as Director, El Paso Field Office, Immigration and Customs Enforcement and Removal Operations*; **MARKWAYNE MULLIN,** *in his capacity as Secretary of the Department of Homeland Security*; **and TODD BLANCHE,** *in his capacity as Attorney General of the United States*,<br><br>***Respondents*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-26-CV-01338-DCG** |

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

For the following reasons, the Court **DENIES** Petitioner Kevin Alexis Valle Cerna's Emergency Motion for a Temporary Restraining Order ("TRO").[1]

## I. BACKGROUND

### A. Factual Background

Solely for the purposes of this Order, the Court assumes that the following allegations are true.

[1] TRO Mot., ECF No. 16.

Petitioner is a citizen of El Salvador.[2] Although Petitioner was previously affiliated with the Barrio 18 street gang, he ultimately renounced his gang affiliation.[3] To avoid violent retaliation for doing so, Petitioner fled El Salvador and unlawfully entered the United States.[4]

U.S. immigration authorities caught and detained Petitioner in April 2023.[5] An Immigration Judge ("IJ") released Petitioner on bond the following month,[6] and he remained out on bond for roughly three years.[7]

---

[2] *E.g.*, Pet., ECF No. 1, at 7.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[3] *Id.* at 8.

[4] *See id.* at 7–8; Asylum Appl., ECF No. 1-1, at 2, 6; Notice Appear, ECF No. 1-2, at 2, 5.

[5] Pet. at 8.

[6] *Id.*; *see also* IJ Order, ECF No. 1-3, at 2.

[7] *But see infra* note 10 and accompanying text (explaining that the Government redetained Petitioner in April 2026).

In 2024, Petitioner filed an application for (1) asylum and (2) withholding of removal to El Salvador under the Convention Against Torture ("C.A.T.").[8] As best as the Court can tell, that application currently remains pending before the Immigration Court.[9]

In April 2026, immigration authorities redetained Petitioner and transferred him to ERO El Paso Camp East Montana, where he remains detained today.[10] As far as the docket reveals, the Government hasn't yet issued a final removal order against Petitioner.[11] Until that happens, the Government can't lawfully remove Petitioner from the United States.[12]

---

[8] Pet. at 8; *see also* Asylum Appl. at 2–11.

*See also, e.g.*, *L.N. v. Garland*, 109 F.4th 389, 394 (5th Cir. 2024) ("Asylum is available where 1) a person is unwilling to return to their home country because of persecution or a well-founded fear of persecution; and 2) the applicant has demonstrated that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." (citation modified)); *Ruiz-Perez v. Garland*, 49 F.4th 972, 979 (5th Cir. 2022) (explaining that one of the benefits of asylum is that the asylee "cannot be removed to his country of nationality" unless and until the Attorney General terminates asylum in accordance with applicable law (citation modified)).

*See also, e.g.*, *Siwe v. Holder*, 742 F.3d 603, 613 n.61 (5th Cir. 2014) (explaining that withholding of removal under C.A.T. "prohibits returning aliens to a specific country where they would face torture").

[9] *See* TRO Mot. at 8–9 (indicating Petitioner's "Individual Merits Hearing is scheduled for August 28, 2026," at which Petitioner will have "the opportunity to present evidence [and] testimony" in support of his application for asylum and withholding); *see also* Notice, ECF No. 15, at 2–3; Notice Ex. A, ECF No. 15-1, at 2.

*See also, e.g.*, *Hines Immigr. Law, PLLC v. EOIR*, No. 1:26-cv-01018, 2026 WL 969020, at *2 (D.D.C. Apr. 10, 2026) ("When [an alien] seeks asylum, withholding of removal, [C.A.T.] protection, or other relief from removal, the [IJ] must . . . hold an individual merits hearing. At that hearing, the [applicant] must have a reasonable opportunity to present evidence, testify, and examine or cross-examine witnesses." (citations omitted)).

[10] *See* Pet. at 8–9; TRO Mot. at 4.

[11] *See, e.g.*, Notice at 2 (stating that "Petitioner's removal proceedings remain ongoing").

[12] *See, e.g.*, *United States v. Chinchilla*, 987 F.3d 1303, 1309 (11th Cir. 2021) ("For the government to remove an unlawful alien from the United States, an [IJ] must first issue a 'final removal order' against the alien."); *Ojeda Duarte v. Warden*, 832 F. Supp. 3d 609, 615 (W.D. Tex. 2026) (Guaderrama, J.) (same).

### B. Petitioner's Petition for a Writ of Habeas Corpus

On May 11, 2026, Petitioner filed a Petition for Writ of Habeas Corpus challenging the legality of his detention.[13] Petitioner claims that the Government had no right to redetain him because:

(1) the IJ's 2023 order releasing him on bond remains in effect;

(2) the Government hasn't followed the prescribed procedures to revoke that order; and

(3) nothing about Petitioner's circumstances has changed since 2023 that would justify revoking his bond.[14]

Largely due to the enormous number of immigration habeas cases that the Court's El Paso Division has received since June 1, 2025,[15] the Court hasn't yet ruled on the Petition.

### C. The TRO Motion

Petitioner filed the instant TRO Motion on August 20, 2026.[16] He asks the Court to:

(1) prohibit Respondents from:

  (a) removing him from the United States; and/or

  (b) transferring him to another immigration detention facility

  before the Court rules on his Petition;

(2) require Respondents to "show cause[] within three days" why the Court shouldn't grant the Petition; and

[13] *See* Pet. at 1–12.

[14] *See id.* at 10–12; *see also supra* notes 6–7 and accompanying text.

[15] *See infra* note 77 and accompanying text.

[16] *See* TRO Mot. at 1–15.

(3) order Respondents to either:

(a) release Petitioner immediately under the conditions of his prior release on bond; or

(b) follow certain statutory and regulatory procedures before revoking his release.[17]

## II. DISCUSSION

### A. Applicable Legal Standard

A TRO "is an extraordinary and drastic remedy" that should "not be granted routinely."[18] A court can't grant a TRO unless "the movant, by a clear showing, carries the burden of persuasion."[19]

---

[17] *See id.* at 14–15.

Petitioner also asks the Court to "[s]et a hearing on Petitioner's request for a *preliminary injunction* at the Court's earliest convenience." *See id.* at 15 (emphasis added). However, the Motion doesn't specifically request a preliminary injunction; it only requests a TRO. *See id.* at 1, 14. In any event, because the Court denies Petitioner's request for a TRO below, *see infra* Section II, the Court won't set a hearing to decide whether to convert that nonexistent TRO into a preliminary injunction. *See Document Operations, L.L.C. v. AOS Legal Techs., Inc.*, No. 20-20388, 2021 WL 3729333, at *3 (5th Cir. Aug. 23, 2021) (per curiam) (noting that there are "situations where TRO proceedings may convert into preliminary injunction hearings").

[18] *E.g.*, *Sw. Airlines Co. v. City of San Antonio*, 752 F. Supp. 3d 635, 642–43 (W.D. Tex. 2024) (citation modified).

[19] *E.g.*, *id.* (citation modified).

That burden "is a heavy one."[20] The movant must show that:

(1) there's a substantial likelihood he'll succeed on the merits;

(2) there's a substantial threat he'll suffer irreparable injury without the TRO;

(3) the threatened injury to the movant outweighs whatever damage the TRO would cause the opposing party; and

(4) granting the TRO wouldn't disserve the public interest.[21]

"[I]f a party fails to meet *any* of the four requirements, the court cannot grant the TRO."[22]

**B. Petitioner's Request to Prohibit Removal**

The Court begins with Petitioner's request for a TRO "prohibiting Respondents from . . . removing him from the United States[] pending adjudication of the Petition."[23] Petitioner claims that he "faces imminent removal due to the current administration's policy of rapidly expediting the removal proceedings for detained immigrants."[24] He fears that "[i]f Respondents remove [him] while his Petition is pending," the Petition will "become[] moot and this Court's ability to grant any effective remedy" will be "extinguished."[25] Thus, to "preserve[] the status quo and this Court's jurisdiction while the Petition is briefed,"[26] Petitioner asks the Court to

[20] *E.g.*, *Hernandez v. AmeriHome Mortg. Co.*, No. 5:25-cv-00996, 2025 WL 3769300, at *1 (W.D. Tex. Sep. 2, 2025) (citation modified).

[21] *E.g.*, *Sw. Airlines Co.*, 752 F. Supp. at 643.

[22] *E.g.*, *id.* (citation modified).

[23] *See* TRO Mot. at 14.

[24] *Id.* at 8.

[25] *Id.*

[26] *See id.* at 9.

"prohibit[] Respondents from . . . removing him from the United States[] pending adjudication of the Petition."[27]

### 1. Petitioner Hasn't Adequately Briefed Why the Court Has Jurisdiction to Temporarily Bar His Removal

Before the Court may evaluate whether Petitioner has satisfied the substantive legal prerequisites for a TRO,[28] he must first establish that the Court has jurisdiction to forbid the Government from removing Petitioner while his Petition remains pending.[29]

8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."[30] In its unpublished opinion in *Imran v. Harper*, the Fifth Circuit ruled that § 1252(g) divested the district court of jurisdiction to grant a petitioner's request for a stay of removal to "preserve the status quo" until the district court could "address [the petitioner's] detention-related claim."[31]

Petitioner appears to be asking for the exact same thing that *Imran* forbids: an "order prohibiting Respondents from . . . removing him from the United States" to "preserve[] the status quo" "pending adjudication of [his] Petition."[32] Yet Petitioner neither acknowledges *Imran* nor

---

[27] *Id.* at 14.

[28] *See supra* note 21 and accompanying text.

[29] *See, e.g.*, *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) ("As always, jurisdiction first.").

*See also, e.g.*, *Monbo v. SBA*, No. 24-cv-1872, 2024 WL 5056377, at *1 (D.D.C. Dec. 10, 2024) (denying TRO motion where the movant had "not carried her burden of establishing jurisdiction").

[30] 8 U.S.C. § 1252(g).

[31] *See* No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) (per curiam).

[32] *See* TRO Mot. at 9, 14; *see also supra* note 31 and accompanying text.

makes any concerted effort to explain why this Court has jurisdiction to grant his requested TRO notwithstanding § 1252(g).[33]

The Court acknowledges that, as an unpublished opinion, *Imran* doesn't bind this Court.[34] Thus, in at least one prior case, the undersigned Judge has declined to follow *Imran* and granted a stay of removal to preserve the status quo.[35]

But nor is this Court bound to follow its prior decisions.[36] And the undersigned Judge generally prefers to "follow[] unpublished Fifth Circuit decisions because they indicate how the Fifth Circuit might rule in a future, precedential opinion."[37] Absent any binding authority to the contrary, *Imran* is the best indicator of how the Fifth Circuit would apply § 1252(g) to Petitioner's TRO Motion. And absent any serious attempt to analyze why this Court has

---

[33] *See* TRO Mot. at 7 (stating merely that "[t]he jurisdiction-channeling [sic] provisions of 8 U.S.C. § 1252 do not apply" because "Petitioner does not challenge any removal order, any decision to commence proceedings, or any exercise of prosecutorial discretion").

[34] *See* 5TH CIR. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like).").

[35] *See, e.g.*, Order to Show Cause at 5, *Saligan Gonzalez v. De Anda-Ybarra*, No. 3:26-CV-00194 (W.D. Tex. Feb. 12, 2026) (Guaderrama J.), ECF No. 3 ("Respondents may not . . . remove [the petitioner] from the country during the pendency of this case or until the Court orders otherwise. This relief is granted . . . to preserve the Court's jurisdiction and ability to assess the case on its merits."); *id.* at 5 n.16 ("§ 1252(g) is narrow and limits review of cases arising from decisions to commence proceedings, adjudicate cases, or execute removal orders. Petitioner does not appear to challenge any of these discretionary actions. Therefore, the Court respectfully does not find *Imran* persuasive in this case." (citation modified)).

[36] *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent . . . upon the same judge in a different case." (citation modified)).

[37] *See, e.g.*, *Autry v. Ahern Rentals, Inc.*, No. 3:19-CV-00154, 2023 WL 1769208, at *7 (W.D. Tex. Feb. 3, 2023) (Guaderrama, J.).

jurisdiction to prohibit Petitioner's removal notwithstanding *Imran*,[38] the Court is disinclined to grant that relief here.

**2. Petitioner Can't Establish a Likelihood of Success on the Merits of His Request to Bar Removal While His Petition Remains Pending**

Even if the Court adhered to its prior conclusion that § 1252(g) doesn't strip the Court of jurisdiction to issue status-quo-preserving stays of removal,[39] the Court still wouldn't grant one here because Petitioner hasn't established a likelihood of success on the merits.[40]

Petitioner's briefing focuses exclusively on whether he's likely to succeed on the merits of his *Petition*—that is, on the merits of his challenges to the legality of his *detention*.[41] As the undersigned Judge has explained, though, the relevant inquiry when deciding whether to temporarily bar an alien's removal is his likelihood of success on a challenge to the lawfulness of his threatened *removal*—not his ongoing detention.[42] Thus, where the undersigned Judge has issued a TRO or preliminary injunction forbidding the Government from removing an alien, it

---

[38] *See supra* note 33 and accompanying text.

[39] *See supra* note 35 and accompanying text.

[40] *See supra* note 21 and accompanying text.

[41] *See* TRO Mot. at 9–14.

[42] *See Pablo Pablo v. Venturella*, No. 3:25-CV-00566, 2026 WL 2078922, at *4 (W.D. Tex. July 17, 2026) (Guaderrama, J.) ("Some district courts have resolved requests to enjoin removal by evaluating whether the underlying detention claim is substantially likely to succeed on its merits. Others, however, have focused on whether an alien's removal would be lawful, with the rationale that removal—not detention—is the matter for which the petitioner seeks a stay. This Court is persuaded that the relevant claim should match the requested remedy. Thus, the Court will consider whether Petitioner has a substantial likelihood of success on his claim that the Government may not remove him unless and until it affords him certain procedural safeguards." (citation modified) (emphases omitted)).

*See also Zawu Roberts v. De Anda-Ybarra*, --- F. Supp. 3d ----, 2026 WL 1459725, at *8 (W.D. Tex. May 22, 2026) (Guaderrama, J.) ("[W]here the lawfulness of an alien's removal is at issue[,] courts have determined that aliens may satisfy the 'likelihood of success' prong by showing that removal would be or was unlawful."); *Ojeda Duarte*, 832 F. Supp. 3d at 615–16 (similar).

wasn't because those aliens proved they were likely to succeed on the merits of their detention claims.[43] Rather, it was because the Government was threatening to imminently remove the petitioner in violation of applicable law—usually by failing to let the petitioner first seek withholding of removal under the Immigration and Nationality Act ("INA") and C.A.T.[44]

Indeed, a cognizable legal challenge to an imminently threatened removal may be a prerequisite for the Court to grant a stay of removal notwithstanding § 1252(g). As the undersigned Judge has previously concluded, a movant can potentially avoid § 1252(g)'s jurisdictional bar if his request for relief implicates "purely legal questions."[45] Unlike a request to prohibit removal solely for the purpose of "preserv[ing] the status quo so the court can address [the movant's] detention-related claim"—which *Imran* appears to forbid[46]—a request to block the Government from imminently removing an alien in violation of some applicable law

---

[43] *See supra* note 42 and accompanying text; *see also infra* note 44 and accompanying text.

[44] *See Zawu Roberts*, 2026 WL 1459725, at *2 ("[The petitioner] filed a motion asking the Court to enjoin her impending removal on the basis that [the] Government hadn't allowed her to apply for withholding of removal to Sierra Leone under [the INA and C.A.T.]. Respondents responded . . . that they didn't need to allow Petitioner to apply for withholding of removal . . . ."); *id.* at *8 ("[The] Court concludes that the 'likelihood of success' prong here hinges on whether [the petitioner] is likely to succeed in arguing that her removal would be unlawful [unless the Government first gives her] an opportunity to seek withholding of removal. As the Court will now explain, she is likely to succeed on that argument.").

*See also Pablo Pablo*, 2026 WL 2078922, at *2, *4–5, *9 ("[T]he Government . . . plans to remove Petitioner to Mexico without any further proceedings. . . . [A]liens are plainly entitled to an opportunity to seek withholding under [the INA and C.A.T.] . . . . Petitioner is likely to succeed in arguing that the Government may not lawfully remove him without allowing him to seek IJ review of USCIS's negative fear determination. . . . The Court thereby enjoins Respondents from removing Petitioner from the United States until they allow him to seek IJ review of his withholding claims in the manner prescribed by 8 C.F.R. §§ 208.16 and 1208.16." (emphasis omitted)).

*See also supra* note 8 (discussing withholding of removal under C.A.T.).

[45] *See, e.g.*, *Zawu Roberts*, 2026 WL 1459725, at *3 ("[C]ourts seem to agree that § 1252(g) does not divest federal courts of jurisdiction to decide purely legal questions." (citing various cases)).

[46] *See* 2026 WL 93131, at *1; *see also supra* note 31 and accompanying text.

typically implicates a "purely legal question": namely, whether the threatened removal would be unlawful under the circumstances.[47]

But Petitioner doesn't claim that the Government is imminently poised to remove him in violation of some applicable law.[48] Again, all of Petitioner's arguments focus on the legality of his detention—not his potential future removal.[49] Indeed, so long as the Government doesn't remove Petitioner before it issues a final removal order against him, or without affording Petitioner certain legally-mandated opportunities to seek relief from removal, it could be entirely lawful for the Government to remove Petitioner before the Court decides his Petition. Absent any challenge to the legality of the removal he seeks to prevent, Petitioner can't show a likelihood of success on that nonexistent challenge—and, thus, can't obtain a TRO.[50]

### C. Petitioner's Request to Prohibit Transfer

The Court next considers Petitioner's request to "prohibit[] Respondents from transferring [him] to any facility outside" the Western District of Texas "pending adjudication of the Petition."[51] Petitioner claims that "[a] transfer would disrupt his access to counsel, separate him further from his family, and generate needless litigation over this Court's continuing jurisdiction."[52]

---

[47] *See, e.g.*, *Zawu Roberts*, 2026 WL 1459725, at *4 ("Here, Petitioner argues that the Government can't lawfully remove aliens without first giving them an opportunity to apply for protection under [the INA and C.A.T.]. The Court concludes (as other courts have) that whether the Government may lawfully remove an alien is a purely legal issue, meaning that § 1252(g) does not strip the Court of jurisdiction to decide it.").

[48] *See* TRO Mot. at 8–14.

[49] *See id.*; *see also supra* note 41 and accompanying text.

[50] *See supra* note 21–22 and accompanying text.

[51] *See* TRO Mot. at 14.

[52] *See id.* at 8.

### 1. Petitioner Hasn't Established that the Court Has Jurisdiction to Bar Respondents From Transferring Him

Here too, Petitioner must first prove that the Court has jurisdiction to grant that relief.[53] As the Court now explains, courts have split sharply over whether federal judges have jurisdiction to bar the Government from transferring an alien from one detention facility to another.[54]

8 U.S.C. § 1252(a)(2)(B) states (with exceptions not relevant here) that "no court shall have jurisdiction to review" any "other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [8 U.S.C. §§ 1151–1382] to be in the discretion of the Attorney General or the Secretary of Homeland Security."[55] 8 U.S.C. § 1231(g)(1), meanwhile, states that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."[56]

Several courts have ruled that 8 U.S.C. § 1231(g)(1) entrusts decisions about where to house a particular detainee to the Attorney General's discretion—and, thus, that 8 U.S.C. § 1252(a)(2)(B) strips courts of jurisdiction to bar the Government from moving a petitioner from one facility to another.[57] Other courts, however, have reached the opposite conclusion that

---

[53] *See supra* note 29 and accompanying text.

[54] *See, e.g.*, *Singh v. Rios*, No. 26-00786, 2026 WL 973761, at *9 (C.D. Cal. Mar. 2, 2026) (noting the split of authority); *see also infra* notes 57–58 and accompanying text.

[55] 8 U.S.C. § 1252(a)(2)(B).

[56] *Id.* § 1231(g)(1).

[57] *See F.B. v. Oddo*, No. 3:26-cv-717, 2026 WL 1265352, at *4 (W.D. Pa. May 8, 2026) ("Petitioner requests that this Court . . . enjoin Respondents from transferring her out of the district . . . . [T]he Third Circuit has held that the place of detention is left to the discretion of the Attorney General. Consequently, the Court lacks jurisdiction to entertain Petitioner's request to enjoin her transfer." (citation modified)).

*See also Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) ("Petitioner requests that the Court enjoin Respondents from transferring him to another

§ 1231(g)(1) doesn't specifically and expressly grant the Attorney General discretion over detainee transfers—and, thus, doesn't divest district courts of jurisdiction to enjoin the Government from relocating a detainee outside the district's geographical boundaries.[58]

As far as this Court is aware, the Fifth Circuit hasn't yet taken a position on that exact issue. And although the undersigned Judge has previously entered orders preliminarily forbidding the Government from transferring a habeas petitioner outside the Western District of

---

district. . . . The Court lacks subject matter jurisdiction to grant this relief. . . . [T]he determination of where to detain an alien to facilitate removal falls squarely within the discretion of the Attorney General.").

*See also, e.g.*, *Zu Ping Chen v. Harper*, No. 3:25-cv-00970, 2026 WL 841180, at *5 (M.D. Ala. Jan. 21, 2026) ("[C]ourts have interpreted [8 U.S.C. §§ 1252(a)(2)(B) & 1231(g)(1)] to mean that a district court lacks jurisdiction to enjoin the government from transferring immigration detainees to other districts, as those decisions fall within the discretion of the Attorney General." (citation modified))

[58] *See Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209–10 (4th Cir. 2019) ("[W]hen § 1252[(a)(2)(B)] strips courts of jurisdiction to review decisions or actions for which authority is '*specified* . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security,' such discretionary authority may not be implied; it must be explicitly conferred in the statute. . . . [T]he language of § 1231(g) does not address transfers at all, nor does it explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers. Indeed, § 1231(g) appears to relate more centrally to the government's brick and mortar obligations for obtaining facilities in which to detain aliens. . . . Accordingly, we conclude that § 1252(a)(2)(B)[] does not strip courts of jurisdiction to review transfer decisions.").

*See also Öztürk v. Hyde*, 136 F.4th 382, 395 (2d Cir. 2025) ("[T]he question is not whether § 1231(g) requires an exercise of discretion . . . [E]ven if it probably does, the crux is whether the text specifies that the decision is in the discretion of the Attorney General. We have held that when a statute authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion . . . the decision is not one that is specified to be in the discretion of the Attorney General for purposes of § 1252(a)(2)(B)[]. Section 1231(g) has no such additional language." (citation modified)).

*See also, e.g.*, *Rojano Gonzales*, No. 1:25-CV-6080, 2025 WL 3145764, at *10 (N.D. Ga. Nov. 3, 2025) ("[T]he Court finds that § 1252(a)(2)(B)[] . . . does not deprive this Court of jurisdiction to order ICE to keep Petitioner in the Northern District of Georgia pending further order of this Court."); *Esparza v. Knight*, No. 1:25-cv-00601, 2025 WL 3228282, at *3–4 (D. Idaho Nov. 19, 2025) (similar); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 949–50 (D. Colo. 2025) (similar); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248, 2025 WL 2419263, at *6–7 (N.D. Cal. Aug. 21, 2025) (similar).

Texas,[59] the Court now recognizes that it was erroneous to do so without first analyzing whether § 1252(a)(2)(B) divested the Court of jurisdiction to issue such orders. Thus, before the Court can even consider Petitioner's request for "a [TRO] prohibiting Respondents from transferring [him] to any facility outside the jurisdiction of this Court,"[60] he must persuade the Court to follow the authorities holding that the Court has jurisdiction to grant that relief.[61]

Here too, Petitioner makes no concerted effort to do so.[62] The TRO Motion doesn't even mention the aforementioned split of authority, let alone analyze why the Court should take a particular side on it.[63] Petitioner has consequently failed to establish that the Court has jurisdiction to grant the relief he requests.[64]

To be clear, the Court isn't definitively deciding that it *lacks* jurisdiction to enjoin a detainee's transfer under § 1252(a)(2)(B). The Court merely concludes that Petitioner hasn't carried his burden to prove that the Court *has* jurisdiction. The Court leaves that question undecided for a future case in which a party adequately briefs it.

---

[59] *See, e.g.*, Order to Show Cause at 4–6 & n.20, *Romero Garces v. Bondi*, No. 3:26-CV-00177 (W.D. Tex. Feb. 2, 2026), ECF No. 2 (Guaderrama, J.).

[60] *See* TRO Mot. at 14.

[61] *See supra* notes 29, 58, and accompanying text.

[62] *See* TRO Mot. at 7.

[63] *See id.* (stating only that "[t]he jurisdiction-channeling [sic] provisions of 8 U.S.C. § 1252 do not apply" because Petitioner "challenges only the lawfulness of his physical custody," rather than a "removal order," a "decision to commence proceedings," or an "exercise of prosecutorial discretion").

[64] *Cf. Pablo Pablo*, 2026 WL 2078922, at *7 (denying request "to enjoin Respondents from transferring [the petitioner] to another jurisdiction during the pendency of [his] habeas petition" as "inadequately briefed" partly because the petitioner didn't "adequately explain why the Court should enjoin Respondents from transferring him to another district" (citation modified) (emphasis omitted)).

### 2. Petitioner Hasn't Shown That Transferring Him to Another Facility Would Be Unlawful

Even if this Court (or a higher court) ultimately decided that § 1252(a)(2)(B) doesn't strip district courts of jurisdiction to enjoin detainee transfers, the Court still wouldn't do so here. Again, the Court can't grant Petitioner a TRO unless he shows a likelihood of success on the merits.[65] Here too, Petitioner focuses exclusively on whether he's likely to succeed on the merits of the detention claims in his Petition.[66] By the same logic set forth above, however, the relevant question isn't whether Petitioner will likely prove that his *detention* is unlawful; it's whether he'd likely succeed on a challenge to the legality of the *transfer* he seeks to prevent.[67] Petitioner doesn't claim it would be illegal for the Government to move him to a different facility;[68] he merely claims that it would be inconvenient if the Government did so.[69] That doesn't suffice.

### 3. A TRO Isn't Necessary to Preserve the Court's Jurisdiction

Before moving on, the Court notes that Petitioner's request to bar the Government from transferring him to another facility rests partly on a mistaken premise. Petitioner implies that this Court could lose jurisdiction over his Petition if the Government moved him outside the Western

---

[65] *See supra* note 21 and accompanying text.

[66] *See* TRO Mot. at 9–14; *see also supra* note 41 and accompanying text.

[67] *See supra* notes 41–44 and accompanying text.

*See also Pablo Pablo*, 2026 WL 2078922, at *7 (denying the petitioner's "request to enjoin Respondents from transferring him to another jurisdiction" as "inadequately briefed" where the petitioner didn't analyze whether he'd likely "succeed in arguing that the Government may not lawfully transfer him" (emphasis omitted)).

[68] *See* TRO Mot. at 8–14; *see also id.* at 8 (appearing to concede that "Respondents retain the ability to move Petitioner to a facility outside this District at any time").

[69] *See id.* at 8 (asserting that "[a] transfer would disrupt [Petitioner's] access to counsel" and "separate him further from his family").

District of Texas's boundaries.[70] As the undersigned Judge has previously explained, however, a District Court doesn't lose jurisdiction over a habeas petition just because the Government relocates the petitioner to a different district while the petition is pending.[71] The Court therefore rejects Petitioner's suggestion that the Court should bar Petitioner's transfer "to preserve . . . [its] own jurisdiction."[72]

### D. The Court Won't Issue Another Order to Show Cause

The Court next considers Petitioner's request to "[o]rder Respondents to show cause[] within three days . . . why the writ [of habeas corpus] should not issue."[73] The Court has already issued an order doing exactly that,[74] and Respondents have responded to it.[75] There's no need for the Court to do the same thing again.

---

[70] *See id.* ("A transfer would . . . generate needless litigation over this Court's continuing jurisdiction."); *id.* ("Courts routinely enjoin such transfers to preserve . . . their own jurisdiction."); *id.* at 5–6 ("Petitioner is subject to transfer out of this Court's jurisdiction at any time . . . [A]ny delay risks defeating this Court's jurisdiction . . . .").

[71] *See Sambissa ex rel. Sambissa v. Noem*, No. 3:25-CV-00237, 2025 WL 2946619, at *3 (W.D. Tex. Aug. 31, 2025) (Guaderrama, J.) ("Petitioner . . . argues that the Western District of Texas may lack jurisdiction over the Petition now that the Government has moved Detainee from Texas to New Mexico. The underlying premise of that argument is incorrect. Supreme Court precedent establishes that when a person detained in District A files a habeas corpus petition in District A, the court in District A doesn't lose the power to rule on that petition if the Government subsequently moves the petitioner to District B. Thus, Detainee's post-filing relocation to New Mexico didn't divest the Western District of Texas of jurisdiction over the Petition." (citation modified)).

[72] *Contra* TRO Mot. at 8.

[73] *See id.* at 14; *see also id.* at 8 ("A court entertaining a habeas application 'shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted,' and the return is due 'within three days unless for good cause additional time, not exceeding twenty days, is allowed.'" (quoting 28 U.S.C. § 2243)).

[74] *See* Order Show Cause, ECF No. 4, at 1 ("The Court . . . orders Respondents to show cause why the Court should not grant a writ of habeas corpus." (emphasis omitted)); *see also id.* at 3 (ordering Respondents to do so within three business days of the Court's Order to Show Cause).

[75] *See generally* Resp., ECF No. 6.

Perhaps what Petitioner actually seeks is an order requiring Respondents to show cause why the Court shouldn't issue an *expedited ruling* on the Petition.[76] If so, the Court won't issue such an order.

The undersigned Judge has received over 230 immigration habeas petitions since June 2025. Over 100 of those petitions currently remain pending. "[W]ithout more Judges and more resources to resolve the crushing number of immigration habeas petitions that the Court's El Paso Division has received over the past year, the Court can only do its best to resolve those pending petitions as quickly as possible."[77]

Of those 100+ pending habeas cases, more than 50 have been pending for longer than the Petition here. "Absent overriding interests (such as medical need), fairness considerations favor resolving older petitions before newer ones."[78] "Thus, unless Petitioner can identify some circumstance that sets him apart from every other detainee with a pending habeas petition, the Court is reluctant to expedite its ruling in this case."[79]

Petitioner hasn't identified any exigent circumstance that would justify deciding his Petition before those of the 50+ detainees who've been waiting for even longer.[80] The Court will therefore rule on the Petition in due course, as its heavy caseload permits.

---

[76] *See* TRO Mot. at 8 (arguing that the habeas corpus statute "commands expedition").

[77] *E.g.*, *Oseguera Merlo v. Warden*, No. 3:26-CV-01661, 2026 WL 1873708, at *1 (W.D. Tex. June 23, 2026) (Guaderrama, J.) (citation modified).

[78] *E.g.*, *id.* (citation modified).

[79] *E.g.*, *id.* (citation modified).

[80] *See* TRO Mot. at 1–15.

**E. The Court Denies the TRO Motion to the Extent it Requests Ultimate Relief**

The Court concludes with Petitioner's request for a TRO ordering the Government to release him under the bond conditions that the IJ set in 2023—or, barring that, requiring the Government to follow certain regulatorily-mandated procedures before revoking his release.[81]

**1. The Court Denies the TRO Motion to the Extent it Seeks Petitioner's Release**

"The primary purpose of a TRO is to *maintain* the status quo—not change it."[82] For that reason, "a court cannot render the ultimate relief sought in a habeas petition—releasing a detainee—in the form of a TRO."[83] "Put another way, where a motion for a TRO seeks the same relief as a pending habeas petition, the court must deny the motion."[84] "[O]therwise, the motion for immediate release would function as a form of accelerated review, circumventing the habeas process."[85]

The relief that Petitioner seeks in the form of a TRO—namely, an order mandating his immediate "release under the conditions previously set by the [IJ]"[86]—mirrors the primary form of relief that he seeks in his Petition: "immediate release[] from detention pursuant to the" IJ's 2023 order releasing him on bond.[87] Thus, Petitioner is effectively asking the Court to bypass

---

[81] *See id.* at 14–15; *see also supra* notes 6–7 and accompanying text.

[82] *E.g.*, *Rodriguez Rios v. Garite*, No. 3:25-CV-00744, 2026 WL 973075, at *1 (W.D. Tex. Apr. 9, 2026) (Guaderrama, J.) (citation modified).

[83] *E.g.*, *id.* (citation modified).

[84] *E.g.*, *id.* (citation modified).

[85] *E.g.*, *id.* (citation modified).

[86] *See* TRO Mot. at 14.

[87] *See* Pet. at 9.

the habeas process by granting ultimate relief in the form of a TRO. For the foregoing reasons, the Court can't do that.[88]

### 2. The Court Denies the TRO Motion to the Extent Petitioner Asks the Court to Order Respondents to Follow Specified Procedures Before Revoking His Release

It's less obvious whether the TRO Motion's alternative request—namely, that the Court order Respondents to "follow the revocation procedures required by" applicable law "before [Petitioner's] release may be revoked"—similarly seeks a form of ultimate relief identical to that which he requests in his Petition.[89] The Petition's "Prayer for Relief" doesn't explicitly list that as an alternate form of relief Petitioner would accept if the Court ultimately denies immediate release.[90]

But that may be because Petitioner's former counsel appears to have copied portions of the Prayer for Relief from a different detainee's petition without changing the case-specific details.[91] As an alternative to Petitioner's "immediate release from detention," the Prayer for Relief states that Petitioner seeks an "immediate hearing" to determine whether he "is eligible for

[88] *See supra* notes 82–85 and accompanying text.

[89] *See* TRO Mot. at 14–15 (first citing 8 U.S.C. § 1226(b); and then citing 8 C.F.R. §§ 236.1(c)(9) & 1003.19(e)).

[90] *See* Pet. at 12.

[91] *See id.*

release on appropriate conditions pending adjudication of *her* renewed application for *TPS*."[92] But the Petition doesn't indicate that Petitioner has filed an application for TPS (renewed or otherwise),[93] and Petitioner doesn't identify as female.[94] The Court therefore suspects that Petitioner's former attorney intended to ask for an order barring the Government from revoking Petitioner's release until the Government follows the requisite procedures, but neglected to substitute that request in place of the alternative relief language he may have copied from a prior client's petition.

Ultimately, though, "[p]leadings must be construed so as to do justice."[95] The entire gravamen of Petitioner's challenge to his detention is that the Government revoked his bond without following the procedures established by certain statutory provisions and agency regulations—the same statutes and regulations that Petitioner cites in the alternative relief portion of his TRO Motion.[96] Thus, notwithstanding Petitioner's erroneous reference to

---

[92] *See id.* (emphases added).

"TPS" stands for "Temporary Protected Status." *See, e.g.*, *Sanchez v. Mayorkas*, 593 U.S. 1809, 1811–12 (2021) ("[T]he TPS program . . . provides humanitarian relief to foreign nationals in the United States who come from specified countries. The Government may designate a country for the program when it is beset by especially bad or dangerous conditions, such as arise from natural disasters or armed conflicts. The country's citizens, if already present in the United States, may then obtain TPS. That status protects them from removal and authorizes them to work here for as long as the TPS designation lasts." (citing 8 U.S.C. § 1254a)).

[93] *See* Pet. at 4–12.

[94] *See* Asylum Appl. at 2 (checking the box marked "Male" next to "Gender"); *see also* Pet. at 4–12 (otherwise using male pronouns to refer to Petitioner).

[95] FED. R. CIV. P. 8(e).

[96] *Compare* Pet. at 10–12 (first citing 8 U.S.C. § 1226; and then citing 8 C.F.R. §§ 236.1(c)(9) & 1003.19), *with* TRO Mot. at 14–15 (first citing 8 U.S.C. § 1226; and then citing 8 C.F.R. §§ 236.1(c)(9) & 1003.19).

"TPS,"[97] the Court understands Petitioner to be claiming that the Government can't redetain Petitioner unless and until it follows the applicable statutory and regulatory procedures for revoking his bond.[98] Because the TRO Motion asks the Court to order the Government follow those same procedures "before his release may be revoked,"[99] the Court concludes that the Petitioner is seeking the same ultimate alternative relief as the Petition, but in the form of a TRO. Again, Petitioner can't do that.[100]

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's "Emergency Motion for Temporary Restraining Order and Order to Show Cause Why a Writ of Habeas Corpus Should Not Issue" (ECF No. 16) in its entirety.

Now that the Senate has confirmed Respondent Todd Blanche as the Attorney General of the United States, the Clerk of Court **SHALL REMOVE** the word "Acting" from Respondent Blanche's title on the Court's CM/ECF system.

**So ORDERED and SIGNED this 27th day of August 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[97] *See supra* note 92 and accompanying text.

[98] *See* Pet. at 10–12.

[99] *See* TRO Mot. at 14–15.

[100] *See supra* notes 82–85 and accompanying text.